1

2

3                    IN THE UNITED STATES DISTRICT COURT

4              FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6  TURTLE ISLAND RESTORATION NETWORK and        No. 09-5239 CW
   MAYPORT VILLAGE CIVIC ASSOCIATION,
7                                                ORDER GRANTING
              Plaintiffs,                        DEFENDANT'S
8                                                MOTION FOR
        v.                                       JUDGMENT ON THE
9                                                PLEADINGS
   UNITED STATES DEPARTMENT OF STATE,            (Docket No. 17)
10
              Defendant.
11  _____/

12

13     Plaintiffs Turtle Island Restoration Network (TIRN) and

14  Mayport Village Civic Association allege that Defendant United

15  States Department of State does not satisfy its obligations under

16  the National Environmental Policy Act (NEPA) and the Endangered

17  Species Act (ESA) when it certifies that foreign nations meet the

18  requirements of section 609(b)(2) of Public Law 101-162, 103 Stat.

19  988, 1037-38 (Nov. 21, 1989) (codified at 16 U.S.C. § 1537 note).

20  Defendant moves for judgment on the pleadings.  Plaintiffs oppose

21  the motion.  The motion was heard on June 3, 2010.  Having

22  considered oral argument and all the papers submitted by the

23  parties, the Court GRANTS Defendant's Motion.

24                          BACKGROUND

25     Passed by Congress in 1989, section 609(b)(1) of Public Law

26  101-162 bans the importation of shrimp harvested with technology

27  that may adversely affect sea turtles.  103 Stat. at 1037.  Under

28  section 609(b)(2), this ban "shall not apply if the President shall

United States District Court
For the Northern District of California

determine and certify to the Congress" that

> (A) the government of the harvesting nation has provided documentary evidence of the adoption of a regulatory program governing the incidental taking of such sea turtles in the course of such harvesting that is comparable to that of the United States; and
>
> (B) the average rate of that incidental taking by the vessels of the harvesting nation is comparable to the average rate of incidental taking of sea turtles by United States vessels in the course of such harvesting; or
>
> (C) the particular fishing environment of the harvesting nation does not pose a threat of the incidental taking of such sea turtles in the course of such harvesting.

103 Stat. at 1038.  The certification authority under section 609(b)(2) has been delegated to Defendant.  Delegation of Authority Regarding Certification of Countries Exporting Shrimp to the United States, 56 Fed. Reg. 357 (Dec. 19, 1990).

The certification process under section 609(b)(2) is implemented through guidelines promulgated by Defendant.  These guidelines have been revised on several occasions since they were first promulgated in 1991.  The version currently in use was promulgated in 1999.  See generally Revised Guidelines for the Implementation of Section 609 of Public Law 101-162 Relating to the Protection of Sea Turtles in Shrimp Trawl Fishing Operations, 64 Fed. Reg. 36,946 (July 8, 1999) (1999 Guidelines).  Since the inception of the certification program, several parties have challenged the various iterations of Defendant's implementation guidelines.

In 1992, Earth Island Institute, of which TIRN was formerly a part, filed a lawsuit in the Northern District of California, asserting that Defendant had improperly implemented and

United States District Court
For the Northern District of California

administered the section 609(b)(2) certification process and had
not banned the importation of shrimp as required by section
609(b)(1).  See generally Earth Island Inst. v. Christopher, 6 F.3d
648 (9th Cir. 1993) (Earth Island I).  The district court dismissed
the action for lack of subject matter jurisdiction, concluding that
Earth Island's challenge to section 609(b) fell within the
exclusive jurisdiction of the United States Court of International
Trade (CIT).  The Ninth Circuit agreed, holding that section 609(b)
concerns an embargo on the importation of merchandise, which lies
within the CIT's exclusive jurisdiction under 28 U.S.C. § 1581(i).
Earth Island I, 6 F.3d at 651.

Earth Island then filed suit in the CIT, alleging that the
certification process, as provided for by the implementation
guidelines, did not comport with section 609.  See Earth Island
Inst. v. Christopher, 913 F. Supp. 559, 562 (CIT 1995) (Earth
Island II); see generally Revised Guidelines for Determining
Comparability of Foreign Programs for the Protection of Turtles in
Shrimp Trawl Fishing Operations, 58 Fed. Reg. 9,015 (Feb. 18, 1993)
(1993 Guidelines).  Specifically, Earth Island complained that the
1993 Guidelines impermissibly restricted the geographical scope of
the ban imposed by section 609(b)(1).  Id. at 562.  Earth Island
also objected to how Defendant determined whether the incidental
taking of sea turtles was "comparable to that of the United
States."  Id.  The court agreed that Defendant inappropriately
limited the areas to which the ban applied, but concluded that the
record did not, at that time, support a finding that the 1993
Guidelines contravened section 609(b)(2).  Earth Island II, 913 F.

3

Supp. at 579-80.

    In a subsequent suit, Earth Island, which TIRN eventually
replaced as a named plaintiff, asserted that Defendant's 1999
Guidelines did not comport with section 609(b)(2).  See generally
Earth Island Inst. v. Daley, 48 F. Supp. 2d 1064 (CIT 1999); Turtle
Island Restoration Network v. Mallett, 110 F. Supp. 2d 1005 (CIT
2000).  In particular, TIRN complained that the 1999 Guidelines
impermissibly provided for a procedure through which shipments of
shrimp from uncertified countries could be imported into the United
States.  See Turtle Island Restoration Network v. Evans, 284 F.3d
1282, 1286-87 (Fed. Cir. 2002) (Earth Island III).  Although the
CIT agreed with TIRN's position, the Federal Circuit reversed,
concluding that the 1999 Guidelines reflected a reasonable
interpretation of section 609(b).  Earth Island III, 284 F.3d at
1297.

    The 1999 Guidelines were promulgated in response to objections
raised by the World Trade Organization on behalf of foreign
countries that argued that section 609(b) violated the 1994 General
Agreement on Tariffs and Trade.  Earth Island III, 284 F.3d at
1289.  Defendant intended the revisions contained therein "to
increase the transparency and predictability of the certification
process and to afford foreign governments seeking certification a
greater degree of due process."  64 Fed. Reg. at 36,946.  To this
end, the 1999 Guidelines define when the section 609(b)(1) ban
applies, list factors Defendant considers when certifying countries
under section 609(b)(2) and prescribe a timeline and procedures for
making certification decisions.  Id. at 36,949-51.

4

United States District Court
For the Northern District of California

1    In this action, TIRN and Mayport Village, a Florida-based

2  organization that represents the interests of businesses and

3  residents of Mayport, Florida, complain that Defendant's

4  certification process violates the NEPA and the ESA.  In

5  particular, Plaintiffs contend that the individual certification

6  decisions made pursuant to the 1999 Guidelines are "major federal

7  actions that have significant impacts on the human environment,"

8  requiring environmental review and public disclosure under the

9  NEPA.  Compl. ¶¶ 30-31.  Plaintiffs also assert that these

10 decisions may affect sea turtle species listed as threatened or

11 endangered under the ESA, triggering the consultation requirement

12 under section 7(a)(2) of the ESA.  Plaintiffs seek a declaration

13 that Defendant violates the NEPA and the ESA and an injunction

14 requiring Defendant to comply accordingly.

15                            LEGAL STANDARD

16    Rule 12(c) of the Federal Rules of Civil Procedure provides,

17 "After the pleadings are closed but within such time as not to

18 delay the trial, any party may move for judgment on the pleadings."

19 Judgment on the pleadings is proper when the moving party clearly

20 establishes on the face of the pleadings that no material issue of

21 fact remains to be resolved and that it is entitled to judgment as

22 a matter of law.  Hal Roach Studios, Inc. v. Richard Feiner & Co.,

23 Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

24                             DISCUSSION

25    Defendant argues that, based on the final judgments in Earth

26 Island II and Earth Island III, res judicata bars TIRN's claims in

27 this action.  Because venue in this case is based on TIRN's

28                                  5

residence within this judicial district, Defendant asserts that Mayport Village's claims must be dismissed for improper venue. Defendant also asserts that Plaintiffs have failed to state a claim.  Alternatively, Defendant contends that the Court lacks subject matter jurisdiction because the CIT has exclusive jurisdiction over claims arising out of the administration and enforcement of section 609(b).

I.   Res Judicata

"Res judicata bars a suit when 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  ProShipLine Inc. v. Aspen Infrastructures Ltd., 594 F.3d 681, 688 (9th Cir. 2010) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).  Res judicata applies "when there is '(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.'"  ProShipLine, 594 F.3d at 688 (quoting Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002).  TIRN does not dispute that Earth Island II and Earth Island III constitute final judgments on the merits or that it is in privity with Earth Island.

To determine whether an identity of claims exists, a court considers four factors: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions."

6

<u>ProShipLine</u>, 594 F.3d at 688 (citation omitted; emphasis in original).  "Whether two suits arise out of the 'same transactional nucleus' depends upon 'whether they are related to the same set of facts and <u>whether they could conveniently be tried together</u>.'"  <u>Id.</u> (quoting <u>W. Sys., Inc. v. Ulloa</u>, 958 F.2d 864, 871 (9th Cir. 1992)) (emphasis in original).  "Reliance on the transactional nucleus element is especially appropriate because the element is outcome determinative."  <u>ProShipLine</u>, 594 F.3d at 689 (citation and internal quotation marks omitted).

An identity of claims exists between this action and the earlier Earth Island litigation and, as a result, res judicata bars TIRN's current claims.  TIRN complains here that Defendant fails to comply with the NEPA or the ESA in the context of its certification decisions.  As explained above, the 1999 Guidelines prescribe the factors Defendant considers in making certification decisions and the procedures through which such decisions are made.  The process and, specifically, the 1999 Guidelines were at issue in <u>Earth Island III</u>, and Plaintiff does not assert that either have materially changed.

At the time of that litigation, it was known that Defendant's process and the 1999 Guidelines did not require that, when it makes certification decisions, it engage in the environmental review and public disclosure that are required when the NEPA applies or the consultation mandated when the ESA applies.  As noted above, Defendant intended the 1999 Guidelines to delineate for foreign countries exactly what it considers when making certification decisions.  The 1999 Guidelines say nothing about an environmental

United States District Court
For the Northern District of California

review or general consultation with other federal agencies.[1]  This

placed TIRN on notice that Defendant does not undertake these

procedures when certifying foreign countries.  Thus, TIRN could

have raised its current claims in its prior litigation before the

CIT but chose not to do so.[2]

TIRN asserts that Defendant mischaracterizes its claims.  It

argues that it is not challenging the 1999 Guidelines, but rather

Defendant's "failure to act in compliance with NEPA and section 7

of the ESA."  Opp'n at 10.  TIRN cannot artfully plead its NEPA and

ESA theories to elude the res judicata bar of its claims.  American

Bird Conservancy v. FCC, 545 F.3d 1190 (9th Cir. 2008), which

addressed an attempt to plead around a jurisdictional bar, is

instructive.  There, the plaintiffs filed suit under the ESA in

federal district court, asserting that "the FCC had not complied

with its statutory obligation to consult with the Secretary of the

Interior when it granted the registration applications for the

seven communications towers."  Id. at 1192.  The district court

---

[1] The 1999 Guidelines provide for consultation with other
federal agencies in limited circumstances.  In assessing any
information on a country's efforts to protect sea turtles outside
the context of "commercial shrimp trawl harvesting," Defendant must
"rely on the technical expertise of [the U.S. National Marine
Fisheries Service] and, where appropriate, the US Fish and Wildlife
Service to evaluate threats to sea turtles and the effectiveness of
sea turtle protection programs."  64 Fed. Reg. at 36,951.

[2] TIRN correctly asserts that "the CIT does not have
jurisdiction over cases involving only NEPA and ESA claims."  Opp'n
at 14.  However, the CIT can hear such claims when they are plead
along with claims within its jurisdiction.  See, e.g., Defenders of
Wildlife v. Hogarth, 330 F.3d 1358, 1363-64 (Fed. Cir. 2003).
Because the CIT had jurisdiction over the claims raised in the
litigation underlying Earth Island III, it could have heard TIRN's
NEPA and ESA claims.

**United States District Court**
For the Northern District of California

dismissed the plaintiffs' suit for lack of subject matter jurisdiction, concluding that they were actually challenging the FCC orders that granted the licenses, the exclusive review of which was vested in the courts of appeals.  <u>Id.</u>  On appeal, American Bird contended that it was not challenging the tower registrations, but rather was objecting only "to the FCC's <u>failure to consult</u> with the Secretary before granting the tower registrations."  <u>Id.</u> at 1193 (emphasis in original).  The Ninth Circuit rejected the plaintiffs' "artful pleading," stating,

> American Bird does not object to the agency's failure to consult in the abstract; rather, it identifies seven discrete tower registrations that it alleges were not supported by adequate environmental investigation.  The tower registrations are therefore inextricably intertwined with the FCC's obligation to consult with the Secretary.  American Bird recognizes as much; in its notice of filing suit, it stated that it would "file litigation to enforce the ESA's requirements should the FCC continue to authorize operation of the subject structures in an unlawful manner."  American Bird cannot elude the Communications Act's exclusive review provision by disguising its true objection to the tower registrations as a "failure to act" claim.

<u>Id.</u>  (emphasis and editing marks omitted).

Similarly here, TIRN is objecting to Defendant's failure to act in compliance with the NEPA and the ESA when it certifies foreign countries under section 609(b)(2).  This failure to act is in the context of Defendant's certification process, as prescribed by the 1999 Guidelines.  The certification decisions, the process through which they are made and the 1999 Guidelines prescribing the process are, as in <u>American Bird</u>, inextricably intertwined.  Thus, even though TIRN phrases its current claims as challenges to Defendant's failure to comply with the NEPA and the ESA, its claims

9

are in fact directed at the 1999 Guidelines.

TIRN analogizes this case to Fund for Animals v. Lujan, in which the Ninth Circuit held that res judicata did not bar the plaintiff's claims.  962 F.2d 1391, 1399 (9th Cir. 1992).  There, the federal government defendants asserted that the action was barred because the plaintiff, in earlier litigation, challenged a 1985 decision to allow bison to leave Yellowstone National Park. Id. at 1398.  The court rejected this argument because the plaintiff's action concerned a 1990 bison management plan, which the court stated differed "significantly from the passive conduct of the named federal defendants in 1985 in failing to prevent bison from leaving Yellowstone."  Id. at 1399.  Because the two actions challenged different conduct, res judicata did not apply.  Id. Here, in contrast, the same government conduct is at issue: the procedures Defendant uses to certify nations under the 1999 Guidelines.  As noted above, TIRN does not contend that either the process or the 1999 Guidelines have materially changed since Earth Island III was litigated.

TIRN also cites Hells Canyon Preservation Council v. United States Forest Service, 403 F.3d 683 (9th Cir. 2005), which is equally inapposite.  In a prior action, the plaintiff had alleged that the Forest Service violated the NEPA by relocating a portion of a trail without filing an environmental impact statement.  Id. at 690.  The court concluded that this did not bar the plaintiff's subsequent suit, in which it complained that "parts of the trail remain inside the Wilderness after the relocation."  Id. at 691 (emphasis in original).  Unlike TIRN here, Hells Canyon challenged

10

the defendant's conduct following a change in the facts.  No such shift has occurred here.  TIRN contends that it is challenging the certification process under the NEPA and the ESA, not section 609(b)(2).  However, Defendant has not altered how it determines whether to certify foreign nations.  This action does not reflect a change in facts, but rather a different legal theory TIRN is employing to challenge the 1999 Guidelines.

Finally, TIRN contends that the recent NEPA and ESA violations they allege could not have been raised in <u>Earth Island II</u> or <u>Earth Island III</u> because they had not yet occurred.  This is true to the extent that Defendant makes certification decisions annually that, according to TIRN, do not comply with the NEPA and the ESA.  However, TIRN does not dispute that this challenge could have been raised with respect to the 1999 Guidelines in the <u>Earth Island III</u> litigation.  By asserting legal theories that could have been adjudicated earlier, TIRN impermissibly attacks the 1999 Guidelines in a piecemeal fashion; allowing TIRN to do so would contravene the purposes of res judicata.

Accordingly, because TIRN's claims arise from the same transactional nucleus of facts as the previous <u>Earth Island</u> litigation, res judicata bars its claims under the NEPA and the ESA against Defendant's 1999 Guidelines.  Res judicata, however, does not bar Mayport Village's claims because it lacks privity with any plaintiff in the previous <u>Earth Island</u> litigation.

II.  Improper Venue

Generally, a civil action in which a defendant is an agency of the United States may "be brought in any judicial district in which

11

1  (1) a defendant in the action resides, (2) a substantial part of

2  the events or omissions giving rise to the claim occurred, or a

3  substantial part of property that is the subject of the action is

4  situated, or (3) the plaintiff resides if no real property is

5  involved in the action."  28 U.S.C. 1391(e).

6       Absent TIRN's participation in the suit, Mayport Village does

7  not establish venue in the Northern District of California.

8  Mayport Village may file suit in either the District of Columbia,

9  in which Defendant resides and a substantial part of the events

10  underlying this suit occurred, or in the Middle District of

11  Florida, in which it is a resident.

12       Accordingly, Mayport Village's claims are dismissed for

13  improper venue.

14                              CONCLUSION

15       For the foregoing reasons, the Court GRANTS Defendant's Motion

16  for Judgment on the Pleadings.  (Docket No. 17.)  TIRN's claims are

17  dismissed with prejudice as barred by res judicata.  Mayport

18  Village's claims are dismissed without prejudice to refiling in a

19  proper venue.

20       The Clerk shall enter judgment and close the file.  The

21  parties shall bear their own costs.

22       IT IS SO ORDERED.

23

24  Dated: July 19, 2010

25                                   CLAUDIA WILKEN
                                     United States District Judge

26

27

28                                   12